IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DANNY LEE WARNER, JR.,

      Plaintiff,

v.                                     Civil Action 2:24-cv-1565
                                        District Judge Michael H. Watson
                                        Magistrate Judge Kimberly A. Jolson

ANNETTE CHAMBERS-SMITH, et al.,

      Defendants.

## OPINION AND ORDER

Plaintiff's Motion to Strike (Doc. 69) and Motion for Reconsideration and Rule 60(b) Relief (Doc. 70) are before the Court. For the following reasons, both are **DENIED**.

## I. BACKGROUND

Plaintiff, a prisoner at Trumbull Correctional Institution ("TCI") proceeding *pro se*, sues Defendants under 42 U.S.C. § 1983 for alleged violations of his rights under the First, Sixth, Fourth, and Fourteenth Amendments. (Doc. 44 at 2–3 (listing the claims proceeding in this case); Doc. 67 at 1–2 (further clarifying Plaintiff's claims)). In short, he challenges the implementation and enforcement of the Ohio Department of Rehabilitation and Correction's ("ODRC") legal mail policy, which requires senders of legal mail, including courts, to obtain a "control number" from the prisoner's correctional institution. If mail does not have a control number, ODRC treats it as "regular mail" and may copy and inspect it outside the prisoner's presence. (*See* Doc. 74-1 (legal mail policy)).

On November 4, 2024, while Plaintiff was incarcerated at Mansfield Correctional Institution, the Undersigned ordered ODRC "to treat the Court's mail to Plaintiff" in this case "as legal mail" ("Legal Mail Order"). (Doc. 20 at 2). After that, ODRC transferred Plaintiff to TCI. (Doc. 33; Doc. 70 at 9). Plaintiff asserts that TCI's mailroom staff failed to treat mail from this

Court in this case as legal mail on three occasions in January 2025.  (Docs. 39, 42, 43). Consequently, he filed three motions seeking contempt sanctions against Defendant Chambers-Smith on February 3 and 5.  (*Id.*).  Defendants filed a single response to Plaintiff's motions on February 24, 2025, but Plaintiff did not file a reply.  (Doc. 46).

On March 11, the Court denied the motions.  (Doc. 54).  In doing so, the Court found that Plaintiff did not meet "the high burden for contempt sanctions."  (*Id.* at 6).  More specifically, the Court stated that although Defendant Chambers-Smith was "an appropriate person to compensate Plaintiff for ODRC's violations of the [Legal Mail Order]," Plaintiff still must show that TCI's mailroom knowingly violated the Legal Mail Order.  (Doc. 54 at 4–5).  To that end, Plaintiff provided communications he sent to TCI staff shortly after his transfer, informing them of the court order but providing few specifics.  (*Id.* at 5).  Even so, Defendants maintained that because of Plaintiff's transfer, the TCI mailroom did not learn about the Legal Mail Order until January 29, 2025, days after the alleged violations.  (*See* Doc. 46 (Defendants' response); Doc. 46-1 (sworn affidavit from TCI's mailroom supervisor)).  On the whole, the Court found it was presented with "a he-said-she-said situation," which was not enough to justify contempt sanctions.  (Doc. 54 at 6).  Still, the Court ordered Defendants' counsel to provide a copy of the Legal Mail Order "to every staff member who works in TCI's mailroom" and warned Defendants that "they may not avoid sanctions in this case for similar reasons" in the future.  (*Id.*).

Now, in the instant Motions, Plaintiff asks the Court to (1) strike Defendants' response to his previous contempt motions as untimely, and (2) reconsider the denial of his motions to sanction Defendant Chambers-Smith.  (Docs. 69, 70).  Defendants did not file a response, and Plaintiff's Motions are ripe for review.

## II. DISCUSSION

Plaintiff's Motions begin with procedural matters. First, he asserts that Defendants' response to his contempt motions was late. (Doc. 69). Second, he explains that Defendants mailed their response to the wrong address, which prevented him from filing a timely reply to his motions. (Doc. 69 at 2–3; Doc. 70 at 2–4; Doc. 70-1 at 2). For these reasons, Plaintiff wants the Court to strike Defendants' response and reconsider his arguments presented in the contempt motions as unopposed. (Doc. 70 at 13).

In its discretion, the Court declines to do either. Instead, justice weighs in favor of the Court construing and considering Plaintiff's Motion for Reconsideration as a timely reply to his contempt motions. (*See* Docs. 70, 70-1). After doing so, the Court still finds that Plaintiff has not met the high burden for contempt sanctions.

### A. Motion to Strike

As stated, Plaintiff seeks to strike Defendants' response to his motions for sanctions as untimely. (Doc. 69 (moving to strike Doc. 46)). He says his certificates of service were dated January 21, 26, and 29, but Defendants filed only one response on February 24, days after their deadline under the Local Rules. (*Id.* at 1). Plaintiff is wrong on both the rules and the math.

To start, Plaintiff takes issue that Defendants addressed his three motions for sanctions in one response. (*Id.* at 1). This argument is puzzling, considering Plaintiff expressly incorporated the facts and arguments he previously raised in each subsequent motion. (*See, e.g.*, Doc. 39 at 1; Doc. 42 at 1 (incorporating the earlier filings "as though set forth here in full")). What's more, the successive motions were close in time. Though Plaintiff's certificates of service read January 21, 26, and 29, (Doc. 43 at 12; Doc. 42 at 8; Doc. 39 at 5), the motions were postmarked January 28 and 31. (Docs. 39-1, 42-1, 43-1); *see, e.g.*, *Powell v. Mich. Dep't of Corr.*, No. 22-2162, 2023 WL

3

3273099, at *1 (6th Cir. May 2, 2023) (saying a prisoner "must include a notarized statement or declaration confirming the date he placed the notice of appeal into the prison's mail system, or else [the court] look[s] to the date on the postmark"); *Jones v. Forshey*, No. 2:20-cv-5466, 2021 WL 5049022, at *2 (S.D. Ohio Nov. 1, 2021) (comparing dates on a prisoner's filing against the postmark to determine when the filing was mailed). And the Court received and docketed two motions on February 3 and one on February 5. (Docs. 39, 42, 43). Considering both Plaintiff's incorporation of his motions and the timeline of events, the Court declines to fault Defendants for filing a single response. *See, e.g.*, *Am. Civil Liberties Union of Ky. v. McCreary Cnty.*, 607 F.3d 439, 451 (6th Cir. 2010) (saying a district court has broad discretion to strike filings under its power to manage its docket).

Still, Plaintiff argues that Defendants' response was at least five days late under the Local Rules, since he served his final motion on January 29, 2025. (Doc. 69 at 1); S.D. Ohio Civ. R 7.2(e) ("Any memorandum in opposition shall be filed within twenty-one days after the date of service of the motion."). Even assuming January 29 is the proper date of service, when a party serves a motion by mail, as Plaintiff did here, Federal Rule of Civil Procedure 6(d) states that "3 days are added after the period would otherwise expire under Rule 6(a)." And Rule 6(a) states that if a deadline falls on "a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

Applied here, Defendants' original deadline under Local Rule 7.2(e) was Wednesday, February 19. Adding three days under Rule 6(d), Defendants' deadline was then February 22. Yet since February 22 fell on a Saturday, Defendants had until Monday, February 24 to respond under Rule 6(a). *See Freeman v. Spoljaric*, No. 1:22-cv-203, 2022 WL 22856661, at *1 (S.D. Ohio July 22, 2022) (calculating deadlines under the Local Rules and Rule 6, finding an extended deadline

under Rule 6(d) fell on a Saturday, and finding the deadline under Rule 6(a) was the Monday after)). Defendants filed their response on that day. (Doc. 46 (filed February 24)). Simply put, Defendants' response to Plaintiff's final motion was timely under the Federal Rules.

For these reasons, the Court declines to exercise its discretion to strike Defendants' response. Plaintiff's Motion (Doc. 69) is **DENIED**.

### B. Motion for Reconsideration

Turning to Plaintiff's Motion for Reconsideration (Doc. 70), he raises three arguments in favor of sanctions. First, he says that Defendants improperly focused on the TCI mailroom's knowledge of the Legal Mail Order, rather than Defendant Chambers-Smith's. (*Id.* at 4–5). Second, he asserts that TCI knew about the Legal Mail Order before January 29. (*Id.* at 7–11). Lastly, he says that Defendant Chambers-Smith had an "affirmative legal duty" under the Legal Mail Order to train "any ODRC facility that [Plaintiff] may be housed in," but that she failed to do so. (*Id.* at 6). Ultimately, though, these arguments do not alter the Court's decision.

To begin, "[a] party that seeks civil contempt sanctions must demonstrate by clear and convincing evidence that the opposing party knowingly 'violated a definite and specific order of the court.'" *Nat'l Labor Rels. Bd. v. Bannum, Inc.*, 93 F.4th 973, 979 (6th Cir. 2024) (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017)); *see also N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (saying the opposing party must have acted "with knowledge of the court's order"). The knowledge component is key. While a violation need not be willful, the moving party must show that the violation was done with awareness of the court order's existence and understanding of its meaning. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (saying intent is irrelevant to contempt proceedings); *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, No. 6:12-cv-91, 2024 WL 3549092, at *9 (E.D. Ky. July 26,

5

2024) (saying contempt is reserved for those "who fully understand the meaning of a court order yet choose to ignore its mandate"); *see, e.g.*, *Anderson v. Furst*, No. 2:17-cv-12676, 2019 WL 2329271, at *2–3 (E.D. Mich. May 31, 2019) (denying contempt sanctions where the plaintiff could not show that subpoenas were served on the nonparties or that the nonparties knew about them); *Orrand v. Sanjects Grp., LLC*, No. 2:13-cv-504, 2014 WL 2874284, at *1 (S.D. June 24, 2014) (adopting a recommendation to deny contempt sanctions because the court's audit order was never served on the defendant).

The Court previously found that "[b]ecause TCI's mailroom processed Plaintiff's mail, he must show it had knowledge of the Legal Mail Order" to warrant sanctions. (Doc. 54 at 4–5). Plaintiff says this is wrong. In his view, only Defendant Chambers-Smith's knowledge of the Legal Mail Order is required. (Doc. 70 at 5–6).

The Court disagrees. Notably, Plaintiff cites no case law in support of his argument. (*Id.*). And at least one other court in this District considered the prison mailroom's lack of knowledge of a similar order before denying a request for sanctions against Defendant Chambers-Smith. *Swain v. Chambers-Smith*, No. 2:23-cv-2809 (S.D. Ohio Apr. 12, 2024) (Doc. 15 at 2) (denying sanctions for "lack of notice" where a similar legal mail order was not served on counsel or the prison's mailroom supervisor); *see also Swain*, No. 2:23-cv-2809, 2024 WL 4540091, at *1–2 (S.D. Ohio Oct. 22, 2024) (citing Doc. 15 before issuing sanctions for violations of the court's legal mail order and noting that Doc. 15 emphasized that Defendant must comply with the order moving forward), *report and recommendation adopted*, No. 2:23-cv-2809, 2024 WL 4956351 (S.D. Ohio Dec. 3, 2024).

This approach has support in the Legal Mail Order's text and the practicalities of prison operations. The Legal Mail Order "require[s] [ODRC] to perform . . . a particular act." *Bannum,*

6

*Inc.*, 93 F.4th at 979.  It orders ODRC to treat Plaintiff's mail from this Court in this case as legal mail.  (Doc. 20 at 2).  While Defendant Chambers-Smith may be an appropriate person to compensate Plaintiff when a prison violates the Legal Mail Order, that is not the end of the analysis.  (Doc. 54 at 4).  Importantly, Defendant Chambers-Smith is not the person who carries out the "particular act" required by the Legal Mail Order.  *Bannum, Inc.*, 93 F.4th at 979.  In other words, TCI's mailroom processes Plaintiff's mail, not Defendant Chambers-Smith.  Therefore, to warrant sanctions against ODRC and Defendant Chambers-Smith as its Director, TCI's mailroom must knowingly violate the Legal Mail Order.  *Id.* at 979–80 (noting the sanctioned party must have "knowledge of the court order" and finding that the defendant had notice and knowledge of the order at issue).  And because Plaintiff is the party moving for sanctions, it is his burden to show TCI did so by clear and convincing evidence.  *Cincinnati Bronze*, 829 F.2d at 590; *Bannum, Inc.*, 93 F.4th at 979; *Gascho*, 875 F.3d at 800.

On that point, Plaintiff next asserts that TCI knew about the Legal Mail Order before January 29.  He again cites two messages he sent to TCI staff that he filed with his initial motions for sanctions.  (Doc. 70-1 at 3–4; *see also* Doc. 43 at 9–10).  Previously, the Court found these communications insufficient to establish knowledge, in part, because "nothing in the record suggest[ed] that [the staff member who responded to them] was the staff member who processed Plaintiff's mail."  (Doc. 54 at 6).  Now, Plaintiff clarifies that TCI's mailroom staff received the messages, though he does not say if the same staff member responded to them and processed his mail.  (Doc. 70 at 8; *see also* Doc. 54 at 6).

Yet as the Court said before, these communications are lacking for other reasons.  (Doc. 54 at 5).  The first message merely says that "[t]here is a court order in place that directs the ODRC to open [Plaintiff's] legal mail only in [his] presence."  (Doc. 70-1 at 3).  It does not provide a case

7

number or say what court issued the order. (*Id.*; Doc. 54 at 5 (discounting this document for this reason)). The second message offers a case number, but it does not say which court issued the Legal Mail Order. (Doc. 70-1 at 4; Doc. 54 at 5). Plus, as the Court previously noted, Plaintiff misquotes the Legal Mail Order in both communications and wrongly suggests that the Court ordered ODRC to treat all of Plaintiff's mail from "courts, attorneys, and other legal entities" as legal mail. (Doc. 70-1 at 3–4; Doc. 54 at 5). The Legal Mail Order says no such thing. (Doc. 20 at 2 (ordering ODRC to treat "mail from this Court addressed to Plaintiff in this case, 2:24-cv-1565," only as legal mail)). Given that the messages do not identify the Court or provide accurate information about the Legal Mail Order, the Court finds they do not clearly and convincingly show that TCI knew about the Legal Mail Order before January 29. (Doc. 54 at 5–6).

Finally, the Court turns to Plaintiff's argument that Defendant Chambers-Smith had an affirmative duty to train TCI's mailroom about the Legal Mail Order. (Doc. 70 at 6). Again, Plaintiff cites nothing in support of this argument. (*Id.*). Nor does the Legal Mail Order support it. The Order says only that ODRC must treat Plaintiff's mail from this Court in this case as legal mail. (Doc. 20 at 2). It does not affirmatively order Defendant Chambers-Smith to personally train every mailroom staff member at "any ODRC facility that [Plaintiff] was or may be housed in." (Doc. 70 at 6); *cf. Bannum, Inc.*, 93 F.4th at 979 (saying a party can only be held in contempt if they violate "a definite and specific order of the court requiring [her] to perform or refrain from performing a particular act" (quoting *Cincinnati Bronze*, 829 F.2d at 591)). So, this argument is also meritless.

At bottom, Plaintiff's Motion for Reconsideration does not change the outcome of the Court's previous decision. (Doc. 70). The Court still finds that Plaintiff has not shown, by clear and convincing evidence, that TCI's mailroom knowingly violated the Legal Mail Order before

8

January 29, 2025. (Doc. 54). As a result, Plaintiff's Motion for Reconsideration (Doc. 70) is **DENIED**.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike (Doc. 69) and his Motion for Reconsideration (Doc. 70) are **DENIED**.

IT IS SO ORDERED.

Date: June 30, 2025                                           s/ Kimberly A. Jolson
                                                              KIMBERLY A. JOLSON
                                                              UNITED STATES MAGISTRATE JUDGE