IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DANNY LEE WARNER, JR.,

    Plaintiff,

v.                              Civil Action 2:24-cv-1565
                               District Judge Michael H. Watson
                               Magistrate Judge Kimberly A. Jolson

ANNETTE CHAMBERS-SMITH, et al.,

    Defendants.

### REPORT AND RECOMMENDATION

Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary/Permanent Injunction with Consolidation on the Merits (Doc. 71) is before the Court. For the following reasons, the Undersigned **RECOMMENDS** that the Renewed Motion be **DENIED**.

**I.    BACKGROUND**

Plaintiff, a prisoner at Trumbull Correctional Institution ("TCI") proceeding *pro se*, brings claims under 42 U.S.C. § 1983 for alleged violations of his rights under the First, Fourth, Sixth, and Fourteenth Amendments. (Doc. 44 at 2–3; Doc. 67 at 1–2; Doc. 104 (further clarifying Plaintiff's claims)).

The Court has summarized Plaintiff's allegations many times. (*See, e.g.*, Doc. 54 at 1–2; Doc. 55 at 1–2; Doc. 67 at 1–2; *see also* Doc. 5-1 at 6–7). Briefly, Plaintiff challenges the constitutionality of the Ohio Department of Rehabilitation and Correction's ("ODRC") legal mail policy. (*See, e.g.*, Doc. 4 at ¶¶ 53–81, 129–45). The policy requires senders of "legal mail," including courts, attorneys, and legal organizations, to obtain a "control number" from the prisoner's correctional institution. If the sender does not, the prison may treat the mail as "regular mail" and copy and inspect it outside of the prisoner's presence. (Doc. 74-1 (legal mail policy,

effective February 1, 2022); *cf.* Doc. 78-1 (policy variance requiring ODRC to treat all mail from federal courts as legal mail, effective April 14, 2025)).

The control number policy, Plaintiff says, "adversely effect[s]" his ability to litigate. (Doc. 37 at 10 (cleaned up); Doc. 67 at 1–2 (summarizing Plaintiff's allegations about mail)). More specifically, Plaintiff claims the policy causes lengthy mailing delays. (Doc. 37 at 8–10; *see also* Doc. 37-1 at 13–17). Even more, he sometimes does not receive his mail at all, or the mail is missing pages. (Doc. 4 at 9–10; Doc. 37-1 at 13–17). In the past, these mailing issues allegedly caused Plaintiff to miss filing deadlines. (Doc. 37-1 at 13–17).

The control number policy is not Plaintiff's only complaint. On January 30, 2025, Plaintiff represents that ODRC established a new mail processing center. (Doc. 37 at 1). He believes that if his legal mail does not have a control number, it will be sent to the center, causing further delays. (*Id.*).

Based upon these issues, Plaintiff filed an Emergency Motion for Temporary Restraining Order ("TRO") Without Notice under Federal Rule of Civil Procedure 65(b) on January 27, 2025. (Doc. 37). In that Motion, he sought *ex-parte* injunctive relief (1) prohibiting ODRC from sending his legal mail to the processing center, and (2) directing Defendants to treat any mail Plaintiff receives from courts, attorneys, or other legal entities as legal mail. (*Id.* at 1). Ultimately, the Court found that Plaintiff did not meet the high burden for *ex parte* relief and denied his motion. (Doc. 55; Doc. 67 at 4 (adopting Doc. 55)). But the Court did not stop him from trying again. The Court allowed Plaintiff to "revise and refile his request for a preliminary injunction and submit additional evidence." (Doc. 55 at 6; *see also* Doc. 67 at 4–5 (saying Plaintiff may refile his motion or rest on his prior motion)).

2

Instead of taking that opportunity, Plaintiff renewed his previous motion on May 1, 2025. (Doc. 71 (renewing Doc. 37) ("Renewed Motion")). Defendants responded to the Renewed Motion, but Plaintiff did not reply. (Doc. 78). The time to do so passed, and the matter is ripe for review. (Doc. 72 (giving Plaintiff until May 27, 2025, to file a reply); *see* Docs. 71, 78).

**II. STANDARD**

Preliminary injunctive relief "is an extraordinary remedy," and the burden to obtain it is high. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Ultimately, Plaintiff must show "that the circumstances clearly demand it." *Id.* (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). Further, because Plaintiff's request is subject to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

The standard to obtain a temporary restraining order or a preliminary injunction are largely the same. *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F.Supp.3d 665, 670 (S.D. Ohio 2016) (noting that the standard for a temporary restraining order emphasizes the irreparable harm factor). For either, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (collecting cases). The movant must make a "clear showing" on all four factors. *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. 2025). Importantly, however, "[i]rreparable harm is the core of the preliminary injunction," and "while

3

the *extent* of an injury may be balanced against [the other three] factors, the *existence* of irreparable harm is mandatory." *Id.* at 883 (internal quotation omitted) (emphasis in original).

### III. DISCUSSION

As noted, Plaintiff alleges that ODRC's control number policy violates his rights under the First Amendment and seeks a preliminary injunction on this basis. (Doc. 44 at 2–3; Doc. 67 at 1–2; Doc. 37 at 12–19). Usually, if a plaintiff can establish a substantial likelihood of success on the merits of a First Amendment claim, he "also has established the possibility of irreparable harm as a result of the deprivation of the claimed [] rights." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 188 (6th Cir. 1998) (citation modified). This is because "the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009) (collecting cases) (citation modified).

Still, that loss must be likely to occur. *EOG Res., Inc.*, 134 F.4th at 885 (emphasizing a plaintiff must "demonstrate that irreparable harm is *likely* in the absence of an injunction" (quoting *Winter*, 555 U.S. at 22) (emphasis in original)). A court cannot grant preliminary injunctive relief based upon speculation or mere possibilities. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). So, even in First Amendment cases, a court must consider whether a plaintiff has demonstrated that he "will be irreparably injured absent the granting of an injunction." *Connection Distrib. Co.*, 154 F.3d at 296; *see also Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 23 F.Supp.3d 834, 842 (E.D. Mich. 2014) (finding irreparable harm in the First Amendment context where the plaintiff "has been and will continue to be irreparably harmed by [the jail's] failure to deliver 'legal mail' that is sent by [the plaintiff's] attorneys to specifically named inmates"); *EOG Res., Inc.*, 134 F.4th at 883 ("Even if a plaintiff

4

has shown a likelihood of success on the merits, a preliminary injunction does not follow as a matter of course." (citation modified)).

As this Court has said before, the constitutionality of ODRC's control number policy is "far from well-settled." *Allah v. Chambers-Smith*, No. 2:22-cv-21, 2023 WL 4030632, at *3 (S.D. Ohio June 15, 2023), *report and recommendation adopted*, No. 2:22-cv-21, 2023 WL 5215408 (S.D. Ohio Aug. 15, 2023). Courts within this District have not yet ruled on the issue, though some have expressed concerns about the policy's legality. *See, e.g.*, *Straughter v. Eddy*, No. 2:23-cv-1268, 2023 WL 6290069, at *4 (S.D. Ohio Sept. 27, 2023) (saying, in light of First Amendment precedent within the Sixth Circuit, "it is no surprise that ODRC's new policy has generated constitutional challenges"); *King v. Aramark Corr. Serv.*, No. 2:23-cv-156, 2024 WL 3461784, at *2 (S.D. Ohio Mar. 22, 2024) (commenting that the control number policy "does not square with" Sixth Circuit precedent). On the other hand, at least one court within the Northern District of Ohio has upheld the policy as constitutional. *Quinn v. Rodriguez*, No. 3:22-cv-661, 2025 WL 623762, at *7–9 (N.D. Ohio Feb. 26, 2025) (ruling at the summary judgment phase that ODRC's control number policy does not violate the First Amendment).

Ultimately, the Undersigned does not need to answer the constitutional question today. Plaintiff's Renewed Motion fails for separate reasons. He has not established that the control number policy will be applied to his future, incoming legal mail. Nor has he clearly shown that his legal mail will be sent to ODRC's processing center. In other words, Plaintiff has not demonstrated a likelihood of irreparable harm absent injunctive relief. *See EOG Resources, Inc.*, 134 F.4th at 885 ("No irreparable harm? No preliminary injunction.").

The Undersigned begins with Plaintiff's concerns about ODRC's mail processing center. Plaintiff says that his mail from attorneys, courts, and other legal entities will be forwarded to this

5

facility, resulting in substantial delays. (Doc. 37 at 9–10). The evidence Plaintiff submits, however, suggests that this concern is speculative. According to a notice attached to Plaintiff's Renewed Motion, only "letters and cards from family and friends" will be forwarded to the center. (Doc. 37-1 at 9). "[L]egal mail" is specifically excluded. (*Id.*).

Even so, Plaintiff says that under ODRC's policy, if his mail does not have a control number, it will not be categorized as legal mail. (Doc. 37 at 9–10). For that reason, although the notice seemingly excludes legal mail from the center, Plaintiff still claims his mail will be forwarded there. (*Id.*). Yet not only legal mail is excluded from the processing center. Business correspondence and other printed materials are also exempt. (Doc. 37-1 at 9). This lends support for the notice's representation that only mail from "family and friends" and "personal correspondence" will go to the center. (*Id.*). And importantly, Plaintiff does not explain how mail bearing return addresses from courts, attorneys, or legal organizations could be mistaken as mail from loved ones. (Doc. 37 at 9–10). Plus, in the nearly seven months since the center opened, Plaintiff has not alleged that even one piece of mail from courts, attorneys, or other legal entities was sent to the center. (*See* Doc. 37 (initial motion for preliminary injunctive relief); Doc. 63 (objections related to his *ex parte* request for injunctive relief); Doc. 71).

Other reasons further persuade the Court that Plaintiff's concerns about the processing center, and his incoming legal mail more generally, are overstated. In his Renewed Motion, Plaintiff lists pending litigation in this Court, the United States District Court for the District of Montana, the Montana Supreme Court, the Ohio Court of Claims, and the Montana Office of Disciplinary Counsel. (Doc. 37 at 10). These cases, Plaintiff asserts, will be "adversely affected" unless the Court enjoins the control number policy as applied to him. (*Id.*). Yet the state court cases are concluded. *See Blodharn v. State*, Case No. OP 24-0689 (Mont. Nov. 27, 2024) (closed

6

as of December 11, 2024); *Warner v. State*, Case No. DA 24-0181 (Mont. Mar. 25, 2024) (closed as of April 22, 2025); *Warner v. Ohio Dep't of Rehab. & Corr.*, Case No. 2024-00351AD (Ohio Ct. of Claims Apr. 16, 2024) (closed as of April 1, 2025). As for his file with the Montana Office of Disciplinary Counsel, Plaintiff provides no recent information on whether this proceeding is still ongoing or whether mail related to it is even legal mail entitled to constitutional protections. (Doc. 37 (filed in January 2025)); *see, e.g.*, *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) ("Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights."); *Longmire v. Mich. Dep't of Corr.*, 454 F.Supp.3d 702, 708 (W.D. Mich. 2020), *aff'd* No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. 2021) (affirming dismissal of a First Amendment claim where the prisoner did not allege a commission was representing him "or otherwise assisting him in accessing the courts or petitioning the government to redress a grievance") ("To be protected, legal mail must implicate a prisoner's right of access to the courts, of petitioning the government to redress grievances, or of competent representation by counsel . . . . Moreover, the mail must be properly and clearly marked as legal materials." (citation modified)).

That leaves Plaintiff's pending cases in this District and the District of Montana. *See Warner v. Chambers-Smith, et al.,* Case No. 2:24-cv-1565 (S.D. Ohio Apr. 4, 2024); *Warner v. Palmer, et al.*, Case No. 2:25-cv-136 (S.D. Ohio Feb. 11, 2025); *Warner v. Godfrey, et al.*, Case No. 6:22-cv-00008 (D. Mont. Feb. 1, 2022); *Warner v. May, et al.*, Case No. 9:24-cv-00126 (D. Mont. June 28, 2024). Notably, Plaintiff proceeds without counsel in these cases, and he does not allege any issues receiving mail from opposing counsel. (*See, e.g.*, Doc. 37-1 at 13–17 (discussing only instances where the control number policy was allegedly applied to mail from courts); Doc. 37 at 7–26 (same)). Therefore, only his mail from federal courts is seemingly at risk.

7

Two facts suggest that the control number policy will not be applied to Plaintiff's mail from these courts. First, on April 14, 2025, ODRC enacted a variance to the policy. (Doc. 78-1). Now, ODRC treats all mail "bearing a valid return address of a federal court . . . as legal mail," even if it does not have a control number. (*Id.* (saying mail from federal courts "does not need a control number to be processed as legal mail")). This includes Plaintiff's mail from this Court and the District of Montana. (*See id.*; Doc. 78 at 7). Second, the Undersigned previously ordered ODRC to treat mail from this Court for this case as legal mail. (Doc. 20 at 2). This order further reduces the risk of harm posed by the policy for Plaintiff's mail in this litigation. (*Id.*).

Even so, Plaintiff says the Court's order is not enough. (Doc. 37 at 8–9). He alleges that ODRC continues to mishandle mail from this Court and has filed several motions for sanctions to that effect. (*Id.*; *see also* Docs. 39, 42, 43, 68, 76). Notably, the Court denied all the motions. (Docs. 54, 100). And the record underlying them indicates that ODRC is treating Plaintiff's mail from this Court, the District of Montana, the Montana Supreme Court, the Montana Office of Disciplinary Counsel, the Ohio Court of Claims, and various attorneys and legal organizations as legal mail, even if the mail does not bear a control number. (Docs. 74-2, 85-1 (legal mail logs from TCI)). Simply put, it seems that Plaintiff's mail is already receiving the treatment he seeks in his Renewed Motion. (*Cf.* Doc. 37 at 1 (asking the Court to order ODRC to treat all of his mail from "courts, attorneys, and other legal entities" as legal mail)). In any event, it does not appear that further injunctive relief is necessary to ensure his incoming mail from federal courts will be treated as legal mail. *Cf.* 18 U.S.C. § 3626(a)(2) (prohibiting federal courts from granting preliminary relief in in cases related to prison conditions that is broader "than necessary to correct the harm").

As discussed, the Court cannot issue a preliminary injunction without a clear showing of likely, irreparable harm. *EOG Res., Inc.*, 134 F.4th at 833–85; *Thompson v. Marietta Educ. Ass'n*, 371 F.Supp.3d 431, 442 (S.D. Ohio 2019) (saying the harm "must be likely, not just possible" (citation modified)). Here, Plaintiff has not met that burden. The record shows that ODRC is not applying the control number policy to mail from federal courts—the only courts where Plaintiff alleges he has pending litigation. (Doc. 37 at 10; *see* Doc. 78-1). Still more, it does not appear that ODRC is applying the policy to any of his mail from courts, attorneys, or legal organizations. (Docs. 74-2; 85-1 (TCI's legal mail logs)). And despite the Court granting him multiple opportunities to provide more evidence, Plaintiff has not presented anything showing that his legal mail will be forwarded to the processing center. (*See* Doc. 55 at 5–6 (allowing Plaintiff to renew his motion and bring additional evidence); Doc. 72 (setting a deadline for Plaintiff to file a reply to his Renewed Motion)). At bottom, though Plaintiff speculates such harms are possible, he has not shown a substantial likelihood that they will occur. *EOG Res., Inc.*, 134 F.4th at 874. Therefore, the Undersigned **RECOMMENDS** that Plaintiff's Renewed Motion be **DENIED**.

IV. **CONCLUSION**

Because Plaintiff has not clearly shown a likelihood of irreparable harm, the Undersigned **RECOMMENDS** that Plaintiff's Renewed Motion for Temporary Restraining Order and Preliminary/Permanent Injunction with Consolidation on the Merits (Doc. 71) be **DENIED**.

IT IS SO ORDERED.

Date: July 10, 2025

s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

9

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).