**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Danny Lee Warner, Jr.,**

**Plaintiff,**

**v.**

**Annette Chambers-Smith, *et al.*,**

**Defendants.**

**Case No. 2:24-cv-1565**

**Judge Michael H. Watson**

**Magistrate Judge Jolson**

## OPINION AND ORDER

Plaintiff renewed his motion for a temporary restraining order ("TRO") or preliminary injunction ("PI") ("TRO Motion"). Mot., ECF No. 71. Defendants opposed, Resp., ECF No. 78, and Plaintiff did not reply.[1] The Magistrate Judge recommended that the Court deny the TRO Motion. R&R, ECF No. 105. Plaintiff objects. Obj., ECF No. 120.

## I. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b)(3), the Court will "determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended

[1] In his objections, Plaintiff states that he mailed a reply brief on May 30, 2025. Obj. 1, ECF No. 120. The Court never received the same, and no reply brief appears on the docket. In an abundance of caution, however, the Court has considered the "Declaration of facts related to legal mail" that is purportedly dated May 30, 2025, ECF No. 120-1, as if it were a timely filed reply brief.

disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II. ANALYSIS

### A. Plaintiff's Motions

Plaintiff's TRO Motion asks for an order "enjoining the unconstitutional policy of Defendants that requires a 'control number' on mail received from a court, attorney, or other legal entity before it can be treated as legal mail." Mot. 1, ECF No. 71. Plaintiff asks the Court to consolidate any hearing on his TRO Motion with a trial on the merits of the case. *Id.* In support of his request for preliminary injunctive relief, Plaintiff stands on the arguments raised in his original motion, ECF No. 37. *Id.*

In that original motion, Plaintiff acknowledges that this Court ordered Defendants to treat mail *from this Court* as legal mail ("Legal Mail Order"), but he contends that he continues to suffer violations of his rights vis-à-vis Defendants' treatment of mail from *other* courts and from attorneys. Additionally, he disputes that the Legal Mail Order protects him from further violations even as to mail from this Court because, he argues, Trumbull Correctional Institution ("TCI") continues to violate that Legal Mail Order. *Id.* at 3. Moreover, he continues, all mail that is not legal mail is sent to a central processing center, and inmates then must pay to print it from their tablets. *Id.* at 3–4. Thus, if his legal mail is improperly sent to the processing center, he will incur unnecessary economic cost to print the same.

*Id.* As such, he contends, he is in imminent danger of irreparable injury without some form of preliminary injunctive relief.

**B. Standard for Preliminary Injunctive Relief**

Plaintiff seeks a TRO or a PI. Both are extraordinary remedies, and courts should grant them only if the moving party proves "that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted); *Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006) (citation omitted); *see also NetChoice, LLC v. Yost*, 711 F. Supp. 3d 844, 852 (S.D. Ohio 2024). Courts evaluate four factors when determining whether the circumstances "clearly" demand a TRO[2] or PI:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc) (internal quotation marks and citation omitted). These four factors are not prerequisites that must be met but rather are considerations that must be balanced. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759

---

[2] The TRO and PI standards are not, however, identical. A TRO lasts for only fourteen days (with the possibility of a fourteen-day extension). Fed. R. Civ. P. 65. Therefore, relative to the PI standard, the TRO standard affords greater weight to "irreparable injury." *See NetChoice*, 711 F. Supp. 3d at 852 (describing immediate, irreparable harm as "paramount" to the TRO inquiry); *Doe v. Univ. of Cincinnati*, No. 1:15-cv-600, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) ("The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm . . . ." (internal quotation marks and citation omitted)).

F.2d 1261, 1270 (6th Cir. 1985) (citation omitted). Thus, a court may grant preliminary injunctive relief even if a movant does not meet his burden of establishing a likelihood of success on the merits, but the movant must show at least "serious questions going to the merits *and* irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Id.* (internal quotation marks and citation omitted). In other words, "[w]here the burden of the injunction would weigh as heavily on the defendant as on the plaintiff, the plaintiff must make a showing of at least a strong probability of success on the merits before a trial court would be justified in issuing the order." *Id.* (citation modified).

## C. Application of Standard to Motions

### 1. Likelihood of Success on the Merits

Where, as here, a party bases his request for preliminary injunctive relief on an alleged violation of a constitutional right, the "likelihood of success on the merits often will be the determinative factor." *Schimmel*, 751 F.3d at 430 (internal quotation marks and citation omitted).

As a preliminary matter, Plaintiff faults the Magistrate Judge for limiting her R&R analysis to Plaintiff's First Amendment claim. Obj. 1, ECF No. 120. But Plaintiff's legal mail claims are likely subject to the same standard—the test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987)—regardless of whether they are brought under the First, Fourth, Sixth, or Fourteenth Amendments. *See, e.g., Sallier v. Brooks*, 343 F.3d 868, 873–84 (6th Cir. 2003); *Erdman v. Mich. Dept. of*

*Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Muhammad v. Pitcher*, 35 F.3d 1081, 1084–85 (6th Cir. 1994); *Bout v. Abramajtys*, No. 93-1383, 1994 WL 329219, at *3 (6th Cir. July 7, 1994); *Lavado v. Keohane*, 992 F.2d 601, 607–08 (6th Cir. 1993); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). Moreover, the Magistrate Judge's conclusion that Plaintiff failed to show a likelihood of future irreparable harm was not claim-specific. Thus, she did not err, and this Court likewise focuses on Plaintiff's likelihood of success under *Sallier* and other legal mail cases (which, as described below, implicate the *Turner* test).

Plaintiff hinges his claims on one of the Sixth Circuit's seminal legal mail cases—*Sallier v. Brooks*. In that case, the Circuit recognized that "[a] prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier*, 343 F.3d at 873 (citation omitted) (describing the *Turner* test). The Circuit distinguished between "legal mail" and other mail, noting that the former is subject to a heightened concern "because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* at 874 (citations omitted). Legal mail "can be opened (but not read) and inspected for contraband[,]" but that must be done in the inmate's presence, if he has so requested. *Id.*

*Sallier* is important to Plaintiff's pending motion in several respects. First, it recognized that "[n]ot all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights." *Id.* at 874. Rather, *Sallier* plainly limits protected "legal mail" to mail that "protect[s] a prisoner's access to the courts and other governmental entities to redress grievances or . . . protect[s] an inmate's relationship with an attorney." *Sallier*, 343 F.3d at 874; *id.* at 875 ("Given that the ABA is not a direct-services legal organization and generally does not provide legal advice and that the envelope contained no marking to alert a prison employee that it was to be opened only in the presence of the prisoner, receipt of this correspondence did not implicate constitutionally protected legal mail rights." (citations omitted)); *id.* at 876 ("[M]ail from a county clerk or register of deeds does not implicate constitutionally protected legal mail rights.").

Accordingly, under *Sallier*, mail from "legal entities" is not necessarily constitutionally protected legal mail. Thus, Plaintiff is not likely to succeed on his argument that all mail from any "legal entity" must be treated as "legal mail." *See* Mot. 1, ECF No. 37; Mot. 1, ECF No. 71. To the contrary, so far as the control number policy applies to mail bearing a return address from "legal entities" that does not indicate a specific attorney is attempting to correspond with Plaintiff and is not otherwise marked as "confidential," the policy is likely constitutional under *Sallier*.

On the other hand, any "mail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise[,]" without violating the inmate's First Amendment rights. *Sallier*, 343 F.3d at 877. Moreover, mail from attorneys is "the very essence of 'legal mail[,]'" and an inmate "may not be required to designate ahead of time the name of the attorney who will be sending the prisoner confidential legal mail." *Id.* at 877 (citations omitted). Accordingly, to the extent that the control number policy causes Defendants to open mail from a court or attorneys without treating it as legal mail, Plaintiff is likely to show an impingement on his First Amendment rights.

But that does not mean that Plaintiff is likely to succeed on his claims. That is, Plaintiff must do more than simply show that the control number policy impinges on his First Amendment (or other) rights because even a prison regulation that impinges on inmates' constitutional rights is valid "if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Thus, proof of the impingement merely begs the question of whether the control number policy is a constitutional impingement under the *Turner* test.

*Sallier* says nothing about whether (or to what extent) a prison can enact policies aimed at helping it distinguish between legitimate legal mail (which is then to be provided all the requisite constitutional protections) and regular mail (which is not). But in a later case, the Sixth Circuit implied that prisons may take at least some steps to verify legal mail before being required to treat it as such.

*See generally Merriweather v. Zamora*, 569 F.3d 307 (6th Cir. 2009) (implying that legal mail must be "properly" labelled to warrant constitutional protection). It thus seems clear that prisons may enact policies to help them distinguish between protected legal mail and illegitimate imposter mail before mail is opened, even if those policies impinge prisoners' constitutional rights.

In this case, though Plaintiff cites cases standing for the general proposition that opening legal mail outside his presence (or reading the same) after he requests otherwise amounts to an impingement of his rights, he cites nothing showing that the impingement is unconstitutional under the *Turner* test. On the other hand, *Turner* makes clear that prisons do not have unbridled discretion to trample inmates' constitutional rights. The issue at the heart of this case, then, is whether the control number policy is a permissible impingement of Plaintiff's rights under *Turner* or whether the prison has gone too far. As that issue is far from obvious, Plaintiff has not established a strong likelihood of succeeding on the merits of his legal mail claims. *See generally Fontroy v. Beard*, 559 F.3d 173 (3rd Cir. 2009) (concluding that a control number policy did not violate the First Amendment); *see also Quinn v. Rodriguez*, No. 3:22-cv-661, 2025 WL 623762, at *7–9 (N.D. Ohio Feb. 26, 2025) (upholding the constitutionality of Ohio's control number policy on summary judgment); *Shine-Johnson v. Chambers-Smith*, No. 2:22-cv-3236, 2024 WL 1714482, at *3 (S.D. Ohio Apr. 22, 2024) ("[W]hether the definition of 'legal mail' in the revised ODRC policy is constitutional is far from 'well-settled.'" (citation omitted)), *R&R adopted*,

2024 WL 4799910 (S.D. Ohio Nov. 15, 2024); *Whitman v. Gray*, No. 5:19-cv-1818, 2022 WL 621553, at *2 (N.D. Ohio Mar. 3, 2022) ("The new ODRC policy satisfies constitutional requirements."); *cf. Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) ("It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar."); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010) ("Prison officials cannot be certain, just from the return address on an envelope, that a letter is from a lawyer . . . rather than from a criminal confederate of the prisoner masquerading as a lawyer . . . ." (citations omitted)); *Jankins v. Huntley*, 235 F. App'x 374, 376 (7th Cir. 2007) ("There may be some disagreement among the circuits concerning the scope of the definition of legal mail . . . but there is no dispute concerning the constitutionality of regulations requiring that prison mail from attorneys be labeled in order to receive special treatment." (cleaned up)); *but see, e.g.*, *King v. Aramark Corr. Serv.*, No. 2:23-cv-156, 2024 WL 3461784, at *2 (S.D. Ohio Mar. 22, 2024) ("The ODRC's new control number requirement does not square with the Sixth Circuit's pronouncement in *Sallier*.").

Plaintiff counters that "[t]his Court's" reasoning has been circular, Obj. 15, ECF No. 37, but he does not persuade. Plaintiff argues that Defendants have no right to re-define what constitutes "legal mail." *Id.* The Court agrees, but the problem is this: Just as Defendants cannot attempt to change the character of a

piece of mail based on whether it contains a control number, neither can Plaintiff establish that all mail bearing the stamp "legal mail" (or the return address of a law firm, etc.) is, indeed, legal mail. The entire point of this case is that things are not always what they seem: mail without a control number can be legal mail, and mail with the return address of an attorney may be regular mail in disguise. And, impingement on Plaintiff's rights is not necessarily impermissible. So, though Plaintiff, the Court, and Defendants appear to agree that Defendants must afford "properly labelled legal mail" the protections it deserves under binding case law, the issue is whether Defendants have any leeway, under the Constitution, to impose restrictions on bona fide legal mail before treating it as such. If they do have some leeway, the question is whether the control number policy is within or outside the bounds of that leeway. There is nothing circular in the Court's identification of this issue.

For these reasons, though Plaintiff might ultimately succeed, he has not shown a likelihood of success on the merits (let alone a strong likelihood) to warrant preliminary injunctive relief. The issue is complex, and resolution in either party's favor is far from certain.

**2. Likelihood of Irreparable Injury**

Plaintiff contends that any First Amendment infringement constitutes irreparable injury. Obj. 13–14, ECF No. 37. He argues that Defendants' control number policy has already injured his First Amendment rights and that the policy

will continue to do so absent preliminary injunctive relief. *E.g.*, Obj. 4, 17, ECF No. 37 at PAGEID ## 653–72.

Defendants respond that Plaintiff filed his motion in January 2025 but that ODRC issued a variance to its control number policy in April 2025. Resp. 2–3, ECF No. 78. They argue that the variance directs prison employees to treat any mail bearing a valid return address from a federal court as legal mail. *Id.* They thus argue that Plaintiff's concerns have been addressed and are moot. Moreover, Defendants contend that the mail that was purportedly opened outside Plaintiff's presence was not related to a direct criminal appeal, a habeas corpus petition, or a civil rights claim, such that Plaintiff suffered no "injury" for purposes of his First Amendment claim.[3] *Id.* at 5–6.

The Magistrate Judge did not analyze Plaintiff's likelihood of success on the merits and recommended denying Plaintiff's motion solely based on his inability to demonstrate a likelihood of irreparable injury. R&R 5–9, ECF No. 105. First, she concluded that ODRC's newest policy is to *not* send legal mail to the central processing center, undercutting any claim Plaintiff made of delay stemming from that new procedure. *Id.* at 5–6 ("Plaintiff does not explain how mail bearing return addresses from courts, attorneys, or legal organizations could be mistaken as mail from loved ones. Plus, in the nearly seven months since the

[3] Defendants frame this as an argument against both finding any success on the merits and against finding a risk of irreparable harm. *Id.* at 5. Because the Court concludes that Plaintiff's motion fails without consideration of this argument, it declines to consider the same.

center opened, Plaintiff has not alleged that even one piece of mail from courts, attorneys, or other legal entities was sent to the center." (citations omitted)). Second, she concluded that: (A) Plaintiff is unlikely to suffer further access-to-the-court issues because his state-court cases have terminated, (B) Plaintiff failed to allege that any attorneys have attempted (or will attempt) to correspond with him, and (C) ODRC's variance and this Court's Legal Mail Order suggest that Defendants will treat any mail purporting to come from a federal court as legal mail. *Id.* at 6–8. Ultimately, then, she concluded that Plaintiff will not suffer irreparable harm in the absence of preliminary injunctive relief. *Id.*

On de novo review, the Court concludes that Plaintiff has not shown a likelihood of irreparable injury absent preliminary injunctive relief given: (1) all the instances of alleged violations occurred before the April 2025 variance; (2) Plaintiff has not disputed the Magistrate Judge's conclusion that his state-court cases are terminated such that he is unlikely to receive future mail from state courts; and (3) the Court has upheld the denial of Plaintiff's motion for contempt based on the Magistrate Judge's finding that Plaintiff has not proven a violation of this Court's Legal Mail Order to treat mail from this Court as legal mail. *See* Decl., ECF No. 120-1 (identifying prior violations from 2022–2024); Op. and Order, ECF No. 138.[4] In short, regardless of how many *prior* alleged

---

[4] Part of the Court's denial of Plaintiff's motion was based on a conclusion that Defendants did not violate the Court's Legal Mail Order (which applies only to mail in this case) with respect to an April 15, 2025 Order because that Order was associated with Plaintiff's *other* case in the United States District Court for the Southern District of

violations Plaintiff cites, injunctive relief is available only to prevent a likelihood of *future* harm, and the current posture of the case does not show Plaintiff is likely to suffer future violations.

The Court is, however, concerned about Plaintiff's new allegation—raised for the first time in his objections to the Magistrate Judge's R&R—that Defendants have "started to let Mr. Warner's legal mail accumulate for upwards of two weeks at a time so that they only have to call him down to open it in his presence at once[.]" Obj 1, ECF No. 120. The unredacted portions of the mail logs that the Court previously considered, ECF Nos. 74-2, 85-1, do not support that contention. But, if true, this would certainly violate the spirit of the Court's Order, ECF No. 20, and could warrant preliminary injunctive relief. Plaintiff is not permitted to raise new arguments for the first time in a reply brief, however. So, should the problem persist, Plaintiff's recourse is to move anew for sanctions or injunctive relief.

**3. Substantial Harm to Others**

Plaintiff stresses that the harm to him and other inmates caused by continued implementation of the control number policy (delay in receiving mail, cost in printing said mail from their tablets, loss of privacy, etc.) vastly outweighs

---

Ohio. Op. and Order 4, ECF No. 138. The Court notes, however, that Defendants may have violated their own April 2025 variance with respect to that piece of mail: under the April 14, 2025, variance, it should have been treated as legal mail regardless of which case it corresponded to. If Plaintiff establishes that Defendants violated the April 2025 variance, the Court will not hesitate to impose sanctions or grant preliminary injunctive relief.

any harm that comes to Defendants from treating legal mail that lacks a control number as legal mail. Obj. 14, ECF No. 37. He focuses on the amount of time it would take prison staff to open legal mail in inmates' presence and compares it to the amount of time staff spends opening regular mail, inspecting it for contraband, and scanning it to inmates' tablets/forwarding it to inmates at the various institutions. *Id.* at 14–15.

The Court disagrees that there is no harm to Defendants or others in granting preliminary injunctive relief. Even if it would be faster for Defendants to open all purported legal mail in inmates' presence than to process the same as regular mail (something the Court does not find based solely on Plaintiff's unsupported assertion), there are other potential harms at issue. The most obvious possible harm is the ability to smuggle contraband through regular mail "masquerading" as legal mail. Although the Court cannot ignore that glaringly obvious possible harm, Defendants did not brief this prong of the analysis, so the Court ultimately finds it weighs in neither party's favor but that Plaintiff did not prove that any irreparable harm to him "decidedly outweighs any potential harm to the defendant if an injunction is issued." *Frisch's,* 759 F.2d at 1270 (internal quotation marks and citation omitted).

**4. Protection of the public interest**

The public has an interest in protecting the freedom of speech, and "it is always in the public interest to prevent the violation of a party's constitutional

rights." *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (internal quotation marks and citation omitted).

On the other hand, the public and those who work or reside in prisons have a strong interest in maintaining prison security. *E.g.*, *Smith v. Jones*, No. 1:08-cv-661, 2009 WL 1309301, at *2 (W.D. Mich. May 11, 2009) ("The public interest would not be served by issuing a preliminary injunction which threatens the safety and security of prison guards and other prisoners.").

Thus, the Court likewise finds this factor to be neutral.

## III. CONCLUSION

Each factor of the TRO/PI analysis either weighs against Plaintiff or is neutral. Weighing the same, the Court finds that preliminary injunctive relief is not warranted. Thus, the Court **OVERRULES** Plaintiff's objections, ECF No. 120, and **ADOPTS** the R&R, ECF No. 105. Plaintiff's motion for preliminary injunctive relief, ECF No. 37, and his renewed motion for the same, ECF No. 71, are **DENIED**. The Clerk shall **TERMINATE** ECF Nos. 71, 105, and 135.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**